1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

12

| | |
|---|---|
| MICHAEL MAY,<br><br>                              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>                              Defendant. | Case No. C09-5591KLS<br><br>ORDER AFFIRMING THE<br>COMISSIONER'S DECISION TO DENY<br>BENEFITS |

13

14

15

16

17

18

19

20

        Plaintiff has brought this matter for judicial review of the decision of the Commissioner

of Social Security (the "Commissioner") to deny his applications for child disability insurance and

supplemental security income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds and orders that for the reasons set forth below, the decision of the

Commissioner's in this case should be affirmed.

21

                        FACTUAL AND PROCEDURAL HISTORY

22

23

24

25

        Plaintiff currently is 27 years old. Tr. 31.  He has a college education and no past relevant

work. Tr. 20, 28, 97, 102, 131, 136, 1457-58, 1502-03, 1529-30.  On December 21, 2001,

plaintiff filed applications for child disability insurance[1] and SSI benefits, alleging disability as

26

---

[1] Plaintiff is entitled to child disability insurance benefits if he is "18 years old or older and [had] a disability that
began before [he] became 22 years old." 20 C.F.R. § 404.350(a)(5).  In this case, plaintiff attained the age of 22 on
December 11, 2004. See Tr. 15.

ORDER - 1

of August 10, 2001, due to systemic onset juvenile rheumatoid arthritis. Tr. 12, 90-91, 130, 698-702.  His applications were denied initially and on reconsideration. Tr. 12, 33-34, 44, 49, 707-08.

A hearing was held before an administrative law judge ('ALJ') on June 28, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 1451-96.  That hearing was continued, however, in order to obtain further consultative examinations. Tr. 714.  A second hearing therefore was held before the same ALJ on August 15, 2005, at which plaintiff, represented by counsel, again appeared and testified, as did a different vocational expert. Tr. 714-15, 1497-1523.

On October 27, 2005, the ALJ issued a decision in which she determined plaintiff to be not disabled, finding specifically in relevant part that he was capable of performing other jobs existing in significant numbers in the national economy. Tr. 714-29.  On March 14, 2007, the Appeals Council granted plaintiff's request for review, vacating the ALJ's decision and remanding the matter for further administrative proceedings. Tr. 755-56.  On May 10, 2007, the same ALJ held a third hearing, at which plaintiff, represented by counsel, appeared and testified, as did a different medical expert and a different vocational expert. Tr. 1524-70.  Upon the submission by plaintiff's counsel of "more than 500 pages of additional medical evidence," that ALJ held a fourth, supplemental hearing, at which plaintiff, represented by counsel, once more appeared and testified, as did yet another medical expert, and the same vocational expert who appeared at the first hearing. Tr. 1571-1614.

On October 25, 2007, the ALJ issued a second decision in which she again determined plaintiff to be not disabled, finding specifically in relevant part that:

(1)    at step one of the sequential disability evaluation process,[2] plaintiff had not

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

engaged in substantial gainful activity since his alleged onset date of disability;

(2)   at step two, plaintiff had "severe" impairments consisting of rheumatoid arthritis, Cushing syndrome, osteoporosis, obesity, and a pain disorder associated with psychological factors and a general medical condition;

(3)   at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(4)   after step three but before step four, plaintiff had the residual functional capacity ("RFC") to perform light exertional work, with certain additional non-exertional limitations[3];

(5)   at step four, plaintiff had no past relevant work; and

(6)   at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 12-30. Plaintiff's request for review was denied by the Appeals Council on August 14, 2009, making the ALJ's second decision the Commissioner's final decision. Tr. 8A; see also 20 C.F.R. § 404.981, § 416.1481.

On September 23, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's second decision. (Dkt. #1-#3). The administrative record was filed with the Court on December 14, 2009. (Dkt. #10). Plaintiff argues the ALJ's second decision should be reversed and remanded to the Commissioner for an award of benefits for the following reasons:

(a)   the ALJ erred in evaluating the medical evidence in the record;

(b)   the ALJ erred in finding plaintiff's impairments did not meet or medically equal the criteria of any of those contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(c)   the ALJ erred in assessing plaintiff's credibility; and

---

[3] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

ORDER - 3

  (d) the ALJ erred in finding plaintiff to be capable of performing other work existing in significant numbers in the national economy.

For the reasons set forth below, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that the ALJ's decision be affirmed.

<u>DISCUSSION</u>

  This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I. <u>The ALJ's Evaluation of the Medical Evidence in the Record</u>

  The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this

ORDER - 4

1   responsibility." Id. at 603.

2       In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must

3   be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by

4   setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

5   his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically

6   flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific

7   and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th

8
9   Cir. 1989).

10      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

11  opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

12  1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

13  only be rejected for specific and legitimate reasons that are supported by substantial evidence in

14  the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or

15  her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

16  omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence

17  has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v.

18
19  Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

20      In general, more weight is given to a treating physician's opinion than to the opinions of

21  those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not

22  accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately

23  supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social

24
25  Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d

26  947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An

ORDER - 5

examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

     A.    Dr. Roes

In his decision, the ALJ found in relevant part as follows:

William F. Roes, M.D., [a] treating physician, performed a physical evaluation on December 28, 2001, . . . . He opined that the claimant was severely limited, which was defined as unable to lift two pounds or unable to stand and/or walk.  Dr. Roes indicated that the claimant could not work even half time, but could possibly be released to work in 2003 (Exhibit 11Fp2).  The undersigned assigns no weight to this opinion as it appears to be based, in large part, on the claimant's complaint of dyspnea on the day of the evaluation.  The chart note indicates that the claimant told Dr. Roes that he could walk only ten feet before becoming short of breath (Exhibit 11Fp5).  He made no such complaint at the previous appointment on November 12, 2001 (Exhibit 11Fp6).  The claimant completed a form for Dr. [Gurjit S.] Kaeley[, M.D.,] on December 27, 2001, and indicated that he could walk two miles without any difficulty (Exhibit 12Fp10).  Dr. Kaeley's chart notes from that visit do not indicate that the claimant complained of shortness of breath.  The undersigned notes that the claimant's sudden inability to walk even 10 feet without shortness of breath is suspect given that he reported no difficulty walking two miles just one day before.  The next report from January 31, 2002, does not describe shortness of breath and indicates that the claimant was doing well overall (Exhibit 12Fp1).

Dr. Roes provided a medical source statement on September 11, 2002.  He reported that the claimant was fairly stable on medications, but continued on a medical regimen with multiple side effects and potential medical complications.  Dr. Roes reported that the claimant was going to school with a low class load, which he tolerated well.  Dr. Roes reported that he did not believe that the claimant was physically capable of working or meeting the rigors of daily employment (Exhibit 22F).  The undersigned assigns no weight to this opinion.  The claimant reported that he completed his Associate of Arts degree in a normal amount of time, which does not indicate low class loads.  The ultimate issue of disability is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance (Social Security Ruling 96-5p).  Moreover, Dr. Roes did not provide any rationale for his conclusion that the claimant was not physically capable of working.

ORDER - 6

> Dr. Roes performed another physical evaluation on December 9, 2002, . . .
> The claimant complained of right shoulder, knee, and hip pain.  Dr. Roes
> opined that the claimant was limited to sedentary work and could not work
> even half time for another year (Exhibit 21Fp22).  He completed another . . .
> evaluation on October 31, 2003, and opined that the claimant was limited to
> sedentary work.  The undersigned gives little weight to these opinions and
> notes that Dr. Roes did not give specific reasons for his estimates.  The fact
> that Dr. Roes is a treating physician does not automatically entitle his opinions
> to weight since he did not provide a significant explanation regarding the basis
> for his conclusions.

Tr. 27-28.  Plaintiff argues these reasons for rejecting the opinions of Dr. Roes were not valid.

The undersigned disagrees.

First, it does seem, as the ALJ noted, that Dr. Roes based his December 28, 2001 opinion

that plaintiff was unable to lift even 2 pounds or stand and/or walk primarily on plaintiff's self-

report that he gets "dyspnea with exertion to the point where he can walk about ten feet before he

starts getting short of breath." Tr. 465, 468.  Indeed, the clinical findings Dr. Roes obtained at the

time were largely unremarkable, revealing no objective evidence of problems with shortness of

breath on plaintiff's part. See Tr. 464, 468.  Also, as expressly noted by the ALJ, plaintiff had

reported to Dr. Kaeley just the day before that he could walk for 2 miles without difficulty and,

no other indication of problems with shortness of breath were noted either then or at the next

visit with Dr. Kaeley in late January 2002. See Tr. 469, 471,477-78, 480; see also Batson, 359

F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by

clinical findings or by record as whole).

The ALJ also properly rejected the September 11, 2002 opinion of Dr. Roes that plaintiff

was not "physically capable of working at this time or meeting the rigors of daily employment," on

the basis that no rationale was provided therefor. See Tr. 671.  Again as found by the ALJ, the

fact that Dr. Roes himself noted that plaintiff was "currently fairly stable on his medications" and

ORDER - 7

was "going to school"–albeit "with a low class load"–and was "tolerating this well" (Tr. 671),

additionally calls into question the credibility of this medical opinion. See Batson, 359 F.3d at

1195.  As the ALJ further found, the record actually reveals that plaintiff completed his degrees

in a normal–and, it appears from the record, even quicker–amount of time. See Tr. 1457-58,

1461-62, 1511-12, 1529-30, 1532-33 (plaintiff testifying he received his two associates degrees

"actually a little quicker" and his bachelors degree after 13 months of study in "an accelerated

online program").

Lastly, as with the previous opinions concerning plaintiff's ability to work issued by Dr.

Roes, the ALJ did not err in rejecting his early December 2002, and late October 2003 opinions

that plaintiff could not perform above the level of sedentary work, on the basis that Dr. Roes did

not provide any specific reasons for assessing that level of restriction. See Tr. 619, 621-22, 628,

674-75.  Again, what objective clinical findings Dr. Roes did include in his evaluation reports or

treatment notes at those times were relatively mild, or at least did not provide sufficient support

for a restriction to sedentary work as found by the ALJ.  The Court, therefore, finds the ALJ did

not give insufficient reasons for declining to adopt the opinions of Dr. Roes.

> B.    Dr. Kaeley and Dr. Khan

The ALJ further found in relevant part as follows:

> Dr. Kaeley performed a physical evaluation on November 20, 2004 . . . He
> opined that the claimant was capable of light work with limitation on
> climbing, pulling, pushing, and reaching.  Dr. Kaeley opined that the claimant
> could not work when the juvenile rheumatoid arthritis flared up (Exhibit
> 38Fp4).  The undersigned assigns some weight to the opinion of Dr. Kaeley
> and notes that the claimant's rheumatoid arthritis last flared in July 2001,
> which was prior to the claimant's alleged disability onset date [of disability].  It
> is noted that Dr. Kaeley indicated that the claimant could not participate in
> pre-employment activities, which was apparently based on the fact that the
> claimant was attending college.  This does not provide a basis for awarding
> disability benefits. . . .

ORDER - 8

1

2   Muhammad Khan, M.D., another treating doctor, performed a physical
    evaluation on December 7, 2005, . . . He opined that the claimant was capable
3   of performing "light-sedentary" work. Dr. Khan indicated that the claimant had
    limitations with bending, balancing, climbing, reaching, handling, kneeling,
4   pushing, and pulling (Exhibit 40Fp4). Dr. Khan performed [a] subsequent
    evaluation . . . on August 7, 2006, and January 31, 2007. On both occasions
5   he opined that the claimant was limited to sedentary work (Exhibits 36Fp16,
    41F, 42F). The undersigned assigns greater weight to the opinion of Dr.
6   Kaeley since he has a longer relationship with the claimant. The undersigned
    further notes that Dr. Khan indicated that the claimant's rheumatoid arthritis
7   caused moderate to marked interference with the ability to perform one or
    more basic work activities. However, the medical record does not describe
8   active rheumatoid arthritis since July 2001. Dr. Khan reported that the
    claimant's rheumatoid arthritis was under good control (Exhibit 36Fp16).
9

10  Tr. 26. The Court finds that, here too, the ALJ did not err.

11       Plaintiff argues the ALJ incorrectly found that his last flare-up occurred in July 2001, but

12  the record supports the ALJ's determination on this issue. It is true, as plaintiff notes, that he

13  continued to experience symptoms related to his rheumatoid arthritis after July 2001, but the ALJ

14  is correct in pointing out that plaintiff's last "flare"—that is, in the sense of an exacerbation in his

15  symptoms resulting in a significant impact on his ability to perform work-related activities—

16  happened then. See, e.g., Tr. 484-85 ("last flare up of disease activity was in July 2001"), 579

17  (same), 672 (same), 1557 (medical expert at May 10, 2007 hearing: "no major disease activity

18  since . . . July of '01"), 1577 (medical expert at September 11, 2007 hearing: "the evidence shows

19  that since July of 2001, he has not had any objective evidence of a flare or exacerbation of his

20  rheumatoid process"); 1581 (same).

21       Plaintiff also argues the ALJ erred in failing to clearly articulate what weight she gave to

22  Dr. Khan's opinions regarding his ability to work, other than stating, as noted above, that he was

23  giving "some" and "greater" weight to that of Dr. Kaeley. But the Court finds nothing vague or

24  confusing in the ALJ's discussion here. As noted above, and as discussed in greater detail below,

25

26

ORDER - 9

the ALJ assessed plaintiff with a residual functional capacity to perform work at the light exertional level, with certain additional non-exertional limitations. This is essentially what Dr. Kaeley determined plaintiff to be capable of doing in late November 2004, as well. As such, the ALJ properly stated he was giving greater weight to Dr. Kaeley's opinion, as it more accurately reflected his own assessment of plaintiff's RFC. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (finding in context of conflicting examining physician opinions, that where opinion of one physician is based on independent clinical findings, it is within ALJ's discretion to disregard that of another examining physician). As for the "some" weight comment, the ALJ also committed no error, since he again properly did not adopt all of Dr. Kaeley's findings, such as, for example, the prohibition against participation in pre-employment activities.[4]

C.      Dr. Debley

Plaintiff next challenges the following findings made by the ALJ:

Cara Debley, M.D., performed a consultative physical evaluation on November 6, 2004. In the narrative written report she opined that the claimant could lift or carry 20 pounds occasionally and 10 pounds frequently. Dr. Debely opined that the claimant could stand or walk for six hours and sit for six hours in an eight-hour workday. She opined that an assistive device was not a medical necessity. Dr. Debley opined that the claimant would have frequent postural limitations bending, stooping, crouching, climbing, kneeling, balancing, crawling, and pulling. She opined that the claimant would have frequent manipulative limitations with reaching, feeling, fingering, and handling. Dr. Debley completed a check box form indicating that the claimant could perform climbing and crawling on a frequent basis, which contradicts her narrative report (Exhibit 26F). The undersigned wrote a letter to Dr. Debley requesting clarification of her opinion, but did not receive a response.

As noted by the Appeals Council, in the prior decision the undersigned gave

---

[4] Because to be found disabled, plaintiff must establish he is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," any limitations or restrictions resulting from attendance at college – clearly a non-medical issue – cannot, as the ALJ found, be the basis of a finding of disability or a disabling condition. 42 U.S.C. § 423(d)(1)(A) (emphasis added); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

ORDER - 10

great weight to Dr. Debley's opinion that the claimant would have frequent postural and manipulative limitations.  The decision noted that a "frequent limitation" meant that a particular activity could be performed frequently (two thirds of a day) rather than a limitation of function for two thirds of a day.  Dr. Debley opined that the claimant would have frequent limitations with reaching, feeling, fingering and handling.  She did not opine that the claimant could perform these activities on a frequent basis.  The undersigned does not accept Dr. Debley's conclusion that the claimant has frequent postural and manipulative limitations.  The undersigned notes that Dr. Debley indicated that she based her opinion, in part, on the history provided by the claimant.  However, the claimant told Dr. Debley that his job at McDonald's caused stress fractures in his shins.  The medical record does not show that the claimant ever had stress fractures in his shins.  The claimant also told Dr. Debley that he had daily swelling and pain in his shoulders and right knee.  Dr. Debley specifically noted that the claimant's joints could become swollen from overuse.  She also indicated that the postural and manipulative limitations she opined were attributable to swelling and pain in the claimant's joints from arthritis.  The objective evidence does not show that the claimant has swelling in his joints from arthritis. . . . Dr. [William] Spence[, the medical expert who testified at the September 11, 2007 hearing,] explained that there was no objective evidence of active rheumatoid arthritis or synovitis.  Since Dr. Spence was able to consider all of the documentary medical evidence, including the report from Dr. Debley, the undersigned will prefer his opinion.  Given that the objective evidence does not show active rheumatoid arthritis, the undersigned finds that the claimant is capable of performing frequent bending, balancing, stooping, kneeling, crouching, crawling, reaching in all directions, handling, fingering, feeling, and climbing ramps and stairs.

Tr. 25.

        In so finding, plaintiff argues the ALJ did not discuss the fact that Dr. Debley reviewed

medical records as well, in addition to performing a physical examination.  While it is true that

Dr. Debley appears to have reviewed at least some of the medical records that existed up to that

time, Dr. Spence, who testified nearly three years later, had the benefit of having a much larger

record to review.  The ALJ, therefore, did not improperly express preference for Dr. Spence's

testimony in part on this basis.  In addition, as noted by the ALJ and as discussed above herein,

ORDER - 11

the record is largely devoid of evidence of active rheumatoid arthritis subsequent to July 2001, [5]

which is an additional valid basis upon which the ALJ relied to discount Dr. Debley's opinion and

instead rely on Dr. Spence's testimony.  Thus, the Court rejects plaintiff's assertion that the ALJ

arbitrarily picked and chose aspects of the medical evidence in the record, and ignored other such

evidence that may have been more favorable to his position.

D.  Dr. Bigley and Dr. Spence

Dr. Spence's medical expert testimony already has been discussed and dealt with in part

above.  The ALJ further addressed the medical expert testimony in the record in relevant part as

follows:

> The objective evidence supports a finding that the claimant's juvenile
> rheumatoid arthritis is controlled with treatment.  Dr. [Robert] Bigley[, who
> testified at the May 10, 2007 hearing,] and Dr. Spence both indicated that
> there was no objective evidence of a significant flare-up of rheumatoid
> arthritis since July 2001.  Dr. Bigley noted that the written record showed
> around five transient episodes of moderate pains per year without signs of
> active arthritis, whereas the claimant testified that he had daily pain and
> swelling.  Dr. Bigley reiterated that the written record did not describe daily
> pain and swelling.  Dr. Spence said that the claimant had no deforming
> residuals of fibrosis or distortion of joints from rheumatoid arthritis.  He noted
> that there were no objective signs of synovitis in the claimant's joints on

---

[5] See also, Tr. 465 (December 28, 2001: "has improved since last flair"), 471 (January 31, 2002: "Overall he is doing well"); 478 (December 27, 2001: "some break through of disease activity with prednisone does of 10 mg"); 492 (October 22, 2001: "overall doing better"), 497-98 (September 17, 2001: flare up by history reported; plaintiff's last follow-up noted to be in July 2001, when he went to emergency room), 505 (August 16, 2001: "decreased flares"), 562 (April 18, 2002: "Overall he has been doing well"), 568 (May 21, 2002: "doing well until one week ago when he started having some right . . . shoulder pain"), 574 (August 15, 2002: "[i]t is likely that his recent right shoulder pain was musculoskeletal"), 592 (April 9, 2004: "his arthritis has been under control mostly"; "denies any conscious symptoms"), 615 (October 10, 2002: "feeling fine"), 619 (December 9, 2002: "has not had any further episodes"), 620 (March 10, 2003: "feeling okay"), 623 (April 4, 2003: "[p]robable flare of arthritis in the left knee"), 625 (June 6, 2003: "doing okay"; "[j]uvenile rheumatoid arthritis, stable"), 649 (December 30, 2003: "feeling better", "[p]robable flare of rheumatoid arthritis"), 654 (February 12, 2004: "without current evidence of [disease] activity"), 671 (September 11, 2002: "fairly stable on his medications"), 679 (July 21, 2004: "doing okay"; "actually doing fairly well"; "he seems to be quite stable"; "[j]uvenile rheumatoid arthritis, currently stable"); 688 (November 6, 2004: "improved with prednisone"), 813 (February 14, 2007: "(juvenile rheumatoid arthritis) with reasonable control"); 1107 (July 19, 2005: "flare-up with decrease in prednisone to 11 mg"), 1365 (December 7, 2005: "currently his disease seems to be under control"), 1373 (August 7, 2005: "rheumatoid arthritis has been under good control"), 1492 (medical expert at June 28, 2004 hearing testifying that plaintiff's inflammatory arthritis was "very low frequency complication").

ORDER - 12

examination.  Thus, although the claimant has alleged that he gets swelling in his knees, shoulders, wrists, and fingers with activity, the undersigned notes that this is not supported by the objective evidence.

Dr. Bigley and Dr. Spence both indicated that the claimant's chest pain was not the result of a cardiac condition.  It is clear that the claimant's obesity is a significant factor with respect to his pain complaints.  Dr. Spence pointed out that anyone with morbid obesity would be expected to experience functionally limiting pain.  The claimant was repeatedly instructed to lose weight, but remains morbidly obese.

. . .

Dr. Spence opined that the claimant could lift 20 pounds occasionally and 10 pounds frequently.  He opined that the claimant could sit for six hours in an eight-hour workday.  Dr. Spence opined that the claimant could stand for six hours in an eight-hour workday.  He said that he saw nothing in the medical record to show that the claimant would miss work for physical reasons[6].  Dr. Bigley opined that the claimant could do light work, but would miss approximately three days of work per month.  The undersigned accepts Dr. Bigley's opinion that the claimant can do light level work.  However, the undersigned does not accept his conclusion that the claimant would miss around three days of work each month.  Dr. Spence testified that he saw nothing in the medical record to show that the claimant's physical problems would cause him to miss work.  Counsel submitted more than 500 pages of additional medical evidence after the hearing on May 10, 2007.  Dr. Spence was able to consider this evidence, but Dr. Bigley was not.  Since Dr. Spence reviewed much more medical evidence than Dr. [James M.] Burnell[, the medical expert who testified at the June 28, 2004 hearing,] or Dr. Bigley, the undersigned assigns greater weight to the opinion of Dr. Spence.

Tr. 23-25.

In challenging the ALJ's findings here, plaintiff first notes Dr. Spence did not examine

him, had been retired from internal medicine for 10 years at the time of his testimony and never

took the board examination for rheumatology.  None of these reasons, however, are sufficient in

themselves to call into question the ALJ's reliance on the testimony of Dr. Spence.  Although the

fact that a physician may be a board certified specialist may warrant giving greater weight to that

---

[6] In a footnote here, the ALJ also noted that "[a]lthough Dr. Spence used the term 'sedentary,' the functional limitations he opined are consistent with the light level of exertion (i.e., lift/carry 20 pounds occasionally and 10 pounds frequently, stand for six out of eight hours, and sit for six out of eight hours)."

ORDER - 13

physician's opinion on an issue in his or her area of expertise, the lack of specialization is not a

valid basis for finding an ALJ's reliance on a non-specialist's opinion improper. See Benecke v.

Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (in general, more deference given to opinion of

specialist about issues related to his or her area of specialty).  Further, there is no requirement

that a physician be actively practicing, or practicing in a particular area of, medicine in order to

qualify as a medical expert.  Indeed, plaintiff did not object to Dr. Spence's qualifications when

he testified at the September 11, 2007 hearing, even though plaintiff appeared at the hearing and

was represented by counsel at the time. See Tr. 1575.

        As noted above, furthermore, the opinion of a non-examining physician may constitute

substantial evidence, if it is consistent with other independent evidence in the record. See Lester,

81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149.  Here, the ALJ properly noted that the medical

evidence in the record–including the more than 500 additional pages Dr. Spence reviewed, but

Dr. Bigley was not able to–was consistent with Dr. Spence's opinion that plaintiff was capable of

performing light work, but not with Dr. Bigley's additional limitation that plaintiff would miss

around three days of work each month.  For example, that evidence did not show the existence of

a significant flare up in plaintiff's rheumatoid arthritis subsequent to July 2001, resulting in work

restrictions at the more restrictive level found by Dr. Bigley and reported by plaintiff.  Plaintiff

further argues the ALJ ignored Dr. Spence's opinion that he was limited to sedentary work only,

but as explained by the ALJ, the specific work restrictions Dr. Spence testified to actually were

consistent with light exertional work.

        Lastly, plaintiff takes issue with the fact that while the ALJ indicated at the end of the

May 10, 2007 hearing that she would anticipate issuing a favorable decision (see Tr. 1569), a

fourth hearing was scheduled for unknown reasons, at which Dr. Spence testified.  As plaintiff

ORDER - 14

himself points out, however, a substantial number of additional pages of evidence (more than 500 as noted above) were submitted after the May 10, 2007 hearing, but before the September 11, 2007 hearing at which Dr. Spence testified.  In addition, contrary to plaintiff's assertion, the ALJ did state why she had decided to hold that most recent, fourth hearing, namely the fact that such a large amount of additional evidence had been submitted.  Although plaintiff states it was the ALJ who requested the additional evidence, and claims this evidence painted substantially the same picture as that already contained in the record, the Court finds nothing in the record to indicate the ALJ was actually "searching for a different opinion" as plaintiff alleges. (Dkt. #11, p. 15); see Schweiker v. McClure, 456 U.S. 188, 195 (1982) (hearing officers who decide social security claims are presumed to be unbiased).  There was no error here.

II.      The ALJ's Step Three Analysis

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments contained in the Listings. 20 C.F.R § 404.1520(d), § 416.920(d); Tackett, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on the claimant to establish he or she meets or medically equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098.  However, "[a] generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996

ORDER - 15

WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone).  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." Social Security Ruling ("SSR 83-19"), 1983 WL 31248 *2.

An impairment, or combination of impairments, medically equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he [or she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to

ORDER - 16

how, or point to any evidence to show, his impairments combined to medically equal a listed impairment).

In her decision, the ALJ found none of plaintiff's impairments met or medically equaled any of those contained in the Listings. Tr. 19-20. Plaintiff first argues the ALJ failed to consider whether any of his impairments in combination medically equaled any impairment contained in the Listings. But the ALJ expressly made findings in this regard. See id. As he has previously argued, plaintiff again asserts the ALJ erred in finding he experienced no significant flare in his rheumatoid arthritis since July 2001.[7] Again, however, and for the reasons set forth above, the ALJ did not err in so finding. The Court also rejects plaintiff's contention that the ALJ erred in finding his diagnosed fibromyalgia was not a medically determinable impairment.

As noted by plaintiff, Dr. Kaeley diagnosed him as having fibromyalgia on more than one occasion. See Tr. 388, 498, 1060, 1083, 1131. 1164, 1283. As the ALJ herself also noted, Dr. Kaeley opined that plaintiff had work-related limitations based in part on that diagnosis. See Tr. 26, 1389. The ALJ, though, reasonably found that the objective medical evidence in the record–including, the Court observes, Dr. Kaeley's own treatment notes–did "not describe the objective signs and findings necessary to make" a fibromyalgia diagnosis. Tr. 19. It is true that a diagnosis of fibromyalgia may not be rejected solely on the basis that it is unsupported by the objective medical evidence in the record. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (ALJ erred in discounting opinions of physicians by relying on own disbelief of claimant's symptoms testimony and his misunderstanding of fibromyalgia). An ALJ, therefore, may not "effectively"

---

[7] For the same reason, the Court rejects plaintiff's additional argument that the ALJ erred in finding him to be only mildly impaired in terms of daily activities, social functioning and concentration, persistence or pace, as not being consistent with his symptoms during his "flare-ups," and improperly concluded, based on Dr. Spence's testimony, that his rheumatoid arthritis did not rise to "listing level severity" as his flare-ups occurred "intermittently and [did] not last 12 months." Tr. 19-20; Dkt. #11, pp. 17-18. The Court further notes that at least in regard to concentration, persistence or pace, the ALJ found plaintiff had "mild to moderate difficulties." Tr. 20 (emphasis added).

ORDER - 17

require there to be "objective" evidence for a disease that eludes such measurement." Id. (citing

Green-Younger v. Barnhart, 335 F.3d 99, 108 (2nd Cir. 2003)).

On the other hand, the Ninth Circuit has noted with apparent approval the description of

fibromyalgia provided by the Seventh Circuit:

> [fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and "the only symptom that discriminates between it and other diseases of a rheumatic character" multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (quoting Sarchet v. Chater, 78 F.3d 305,

306 (7th Cir. 1996)) (emphasis added).  Accordingly, it is the presence of these tender "spots" or

"points" that differentiate a diagnosis of fibromyalgia from some other rheumatic-type condition,

such as, for example, rheumatoid arthritis.  In this case, however, while Dr. Kaeley did find some

"[t]ender points" during the physical examination he performed in early March 2001, no specific

number was noted.  See Tr. 388.  Nor were any such points noted during any of the examinations

Dr. Kaeley performed from April 2001, through January 2007, in which fibromyalgia also was

diagnosed.  See Tr. 376, 381, 472, 478, 485, 492, 498, 505, 511, 517, 559, 563, 569, 574, 579-80,

584, 588, 598, 1035, 1039, 1050, 1060, 1071, 1083, 1089, 1099, 1121, 1131, 1138, 1150, 1163-

64, 1191-92, 1221-22, 1237-38, 1261-62, 1282-83.  Nor have any of the other medical sources in

the record, including Dr. Roes, diagnosed plaintiff with that condition.

Even if the diagnosis of fibromyalgia here could be said to be a medically determinable

impairment, plaintiff has not shown, nor does the Court find, that any work-related limitations

Dr. Kaely found had resulted therefrom rose to Listing-level severity.  As for the argument that

ORDER - 18

the ALJ incorrectly found plaintiff's pain complaints were unrelated to his rheumatoid arthritis, but instead stemmed from his obesity, this is not what the ALJ actually found.  Rather, the ALJ stated that obesity was "a significant factor with respect to" those complaints. Tr. 24.  Nowhere in her decision did the ALJ actually state plaintiff experienced no pain or other symptoms due to his rheumatoid arthritis.  Indeed, the ALJ found it to be a severe impairment, resulting in part in a limitation to a modified range of light work.

Any error by the ALJ, furthermore, in attributing issues with pace to plaintiff's obesity was harmless, as no showing has been made that such error, if any exists, impacted the ALJ's ultimate disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).  Lastly, it should be noted that none of the medical sources in the record, including all three testifying medical experts, found plaintiff's impairments either singly or in combination met or medically equaled any of those contained in the Listings.  Thus, the ALJ's step three determination was not improper.

III.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

ORDER - 19

reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

The ALJ "must identify what testimony is not credible and what evidence undermines the

claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless

affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a

whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir.

2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. Id.

Here, the ALJ discounted plaintiff's credibility in part because despite plaintiff's claims of

disabling symptoms related to his rheumatoid arthritis, the record lacked objective medical

evidence of any significant flare-ups since July 2001, or of any "deforming residuals," joint

distortions, "signs of synovitis" or significant swelling. Tr. 23.  A determination that a claimant's

subjective complaints are "inconsistent with clinical observations" can satisfy the clear and

convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir.

1998).  Plaintiff argues his complaints are supported by Dr. Kaeley's diagnoses of inflammatory

arthritis, but mere diagnoses are insufficient to establish disability. See Matthews v. Shalala, 10

F.3d 678, 680 (9th Cir. 1993).

The ALJ also discounted plaintiff's credibility in part on the basis that this rheumatoid

ORDER - 20

arthritis was largely "controlled with treatment." Tr. 23.  The ALJ may discount a claimant's

credibility on the basis of medical improvement.  See Morgan v. Commissioner of Social Sec.

Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

Plaintiff does not specifically challenge this basis for discounting his credibility, and the Court

finds it to be largely supported in the record.  For example, the record establishes that since July

2001, plaintiff's condition has remained for the most part controlled at therapeutic levels.  See Tr.

161, 164-65, 167-69, 172-73, 178, 180-81, 184, 471, 477-78, 491, 497, 592, 688, 1237-38, 1262,

1328, 1365, 1557, 1578.

    The ALJ next discounted plaintiff's credibility for the following reasons:

> The claimant's activities demonstrate that he is more capable than alleged.  He
> obtained two Associate of Arts degrees and a Bachelor of Arts degree.  The
> claimant indicated that he completed the Associate degrees in a normal
> amount of time.  He said that he had a 3.9 G.P.A. when he completed his
> Bachelor's degree in December 2005.  While the claimant may not have spent
> 40 hours per week on his college coursework, his ability to complete three
> degrees shows a functional ability greater than he asserts.  The claimant went
> to a gym for 6 months during the relevant period, which indicates that he can
> tolerate exercising.  A report dated November 26, 2001, shows that the
> claimant reported having injured his left wrist a week earlier after rough
> housing with his brother and boxing (Exhibit 12Fp14).  These activities are
> inconsistent with the degree of debility alleged.  The claimant told Dr. [David
> C.] Brose[, Ph.D.,] that he prepared his own food and shared housework and
> grocery shopping with his fiancé.  Records from Dr. Kaeley include several self
> assessments in which the claimant indicated that he had no difficulty walking
> outdoors on flat ground, bending down to pick up clothing from the floor, or
> participating in sports or games.  He indicated that he could walk two miles
> with "some" difficulty (Exhibit 12Fp4, 24, 38).  On February 12, 2004, the
> claimant reported that he could lift, climb five steps, cook, vacuum, make a
> bed, and walk an unlimited distance on flat ground without difficulty (Exhibit
> 33Fp1).  On June 6, 2006, the claimant indicated that he could walk two miles
> with "much" difficulty and could walk outdoors on flat ground without
> difficulty (Exhibit 32Fp234).  These reports indicate that his physical capacity
> is greater than he alleged at the hearings.  The claimant testified that his job in
> 2006 ended because his symptoms prevented him from getting to work in a
> timely fashion.  However, elsewhere he reported that he could not afford to
> drive to the job and was looking for other work (Exhibit 32Fp160).  This is
> inconsistent with his testimony.

ORDER - 21

Tr. 24.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

While some of the activities the ALJ noted above may not indicate an ability to perform them necessarily for a substantial part of the day or may not be entirely transferrable to a work setting as argued by plaintiff, others certainly do.  As discussed previously, plaintiff's success in pursuing his college degrees does not demonstrate the level of disability he currently is alleging, but rather is indicative of an ability to persist and perform on a consistent basis at a fairly high level of success, even though he may not have pursued his studies for a full 40 hours per week.[8] In terms of physical capacities, as the ALJ noted the ability to go to the gym for six months and to engage in fairly rigorous physical behavior (such as boxing and walking for up to two miles at a time) further demonstrates that plaintiff is not as disabled in that regard as he claims.  Further, the Court notes that plaintiff's inconsistent report concerning his ability to perform his prior job in 2006, calls into additional question his credibility regarding his subjective complaints. See Smolen, 80 F.3d at 1284.

---

[8] Plaintiff's assertion that the ALJ erred in failing to consider that he merely was attempting to improve his life by advancing his education is beside, or rather proves, the point.  That is, plaintiff's success in pursuing an advanced education actually shows he possesses greater work-related capabilities than he is alleging.  In other words, while it may be admirable on plaintiff's part to try to improve his life, at the same time it demonstrates a lack of credibility in terms of his claimed inability to actually do so based on his asserted impairments.  Again, as discussed previously and plaintiff's assertions notwithstanding, the evidence in the record – including plaintiff's own testimony – reveal not that it took plaintiff 13 months longer than the length of the program to complete his most recent degree, but that he participated in an "accelerated" program, which he completed within that shortened period of time, in addition to completing his two associates degrees in an apparently quicker normal amount of time as well.

ORDER - 22

Finally, plaintiff takes issue with the fact that the ALJ's discounted his credibility in part on the basis of the written statement provided by his mother:

> The claimant's mother, Rhonda Jones, completed a function report on March 7, 2002. She reported that the claimant's ability to move depended on how active his disease was. Ms. Jones indicates that the claimant experienced frequent flares with pain ranging from mild to severe. She said that the claimant never knew whether a day would be relatively pain free or entail incapacitating pain (Exhibit 9E).
>
> . . .
>
> The undersigned assigns weight to [plaintiff's mother's statement] appropriate to [its] probative value. It is noted that Ms. Jones indicated that the claimant had days that were relatively pain free, which contradicts the claimant's testimony. . . .

Tr. 28. Plaintiff argues the ALJ's findings fail to take into account his own testimony later at the September 11, 2007 hearing, that his condition had worsened. But, as discussed above, the ALJ properly discounted plaintiff's testimony in part because the evidence in the record demonstrated that his rheumatoid arthritis was largely controlled on medication. As such, the ALJ did not have to adopt the testimony of plaintiff over the report of his mother indicating he had days that were relatively pain free, contrary to plaintiff's allegations of disabling pain.

IV.    The ALJ's Step Five Analysis

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

ORDER - 23

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this either through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins, 261 F.3d at 857.

In this case, the ALJ assessed plaintiff with the following RFC:

> **. . . the claimant has had the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He can stand**

ORDER - 24

**and/or walk for six hours in an eight-hour workday. The claimant can sit for six hours in an eight-hour workday. He can do frequent pulling with his upper extremities. The claimant needs to alternate between sitting and standing approximately every hour. He can frequently bend, balance, stoop, kneel, crouch, and crawl. The claimant should not climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs. The claimant can do frequent reaching in all directions, frequent handling, frequent fingering, and frequent feeling. The claimant needs to be in a work environment that provides training in proper work pace.**

Tr. 20 (emphasis in original). At the August 16, 2005 hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as he included in his assessment of plaintiff's residual functional capacity. See Tr. 1517. In response thereto, the vocational expert testified that there were other jobs an individual with those limitations, and with the same age and education as plaintiff and no past relevant work, could do. See Tr. 1518. Based on that vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See Tr. 29-30.

Plaintiff argues the ALJ erred in ignoring the testimony of the vocational experts at the May 10, 2007, and September 11, 2007 hearings, both of whom testified that an individual who would miss three days of work per month, would not be able to perform competitive work (see Tr. 1568-69) and would be "well beyond the tolerance of most employers" (see Tr. 1609). But, as discussed above, the ALJ did not err in finding the evidence in the record did not support such a limitation. As such, the testimony of these two vocational experts on this issue is irrelevant to the ALJ's ultimate disability determination. Similarly, because, also as discussed above, the ALJ properly found the evidence in the record did not support the type of manipulative or reaching limitations plaintiff alleges he has, or that he has significant limitations in his ability to interact appropriately with supervisors or co-workers (given that the ALJ did not err in finding only mild difficulties in social functioning, again as discussed above), he also was not required to include

those limitations in the hypothetical question he posed to the vocational expert.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled.  Accordingly, the ALJ's decision hereby is AFFIRMED.

DATED this 6th day of October, 2010.


Karen L. Strombom
United States Magistrate Judge

ORDER - 26